**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

    v.

EDWARD KELLEY,

    Defendant.

Criminal Action No. 22-408 (CKK)

**MEMORANDUM OPINION & ORDER**
(January 22, 2025)

**I.**

A grand jury charged Defendant Edward Kelley by superseding indictment with multiple felony and misdemeanor counts for his alleged conduct during the riot at the United States Capitol on January 6, 2021. *See* Superseding Indictment, ECF No. 52. After a two-day bench trial at which the Court heard testimony from seven witnesses, admitted 102 exhibits into evidence, and considered a detailed stipulation of undisputed facts to which the parties had agreed, the Court found Kelley guilty, beyond a reasonable doubt, of the following offenses:

- Obstructing Officers During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3);

- Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1);

- Destruction of Government Property Causing Damage in an Amount Exceeding $1,000, in violation of 18 U.S.C. § 1361;

- Destruction of Government Property Causing Damage in an Amount Less Than $1,000, in violation of 18 U.S.C. § 1361;

- Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

- Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4).

- Entering and Remaining in the Gallery of a House of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B);

- Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);

- Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and

- Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

*See* Findings of Fact and Conclusions of Law, ECF No. 84, at 1–2, 39–40.  Applying the Supreme Court's decision in *Fischer v. United States*, 603 U.S. 480 (2024), the Court found Kelley not guilty of one other felony count with which the grand jury had charged him:  Obstruction of an Official Proceeding and Aiding and Abetting the Same, in violation of 18 U.S.C. §§ 1512(c) and 2.  *See* Findings of Fact and Conclusions of Law at 22–27.

As the Court described in its Findings of Fact and Conclusions of Law, ECF No. 84, Kelley acted violently and destructively on January 6, 2021, including by assaulting a U.S. Capitol Police officer who was attempting to stop rioters from breaching the Capitol Building:

> Once under the scaffolding [around the West Front of the Capitol Building], Kelley encountered [U.S. Capitol Police] Officer Albert Chow, who was defending an entrance to the area and had become isolated from other officers and outflanked by rioters after other [U.S. Capitol Police] officers retreated to another position.  At the time, Officer Chow was actively working to repel rioters from unlawfully entering the Capitol Building.  He was also wearing a black jacket that read "U.S. Capitol Police" in clear, block letters across the back.   While Officer Chow was attempting to perform these duties in the face of an overwhelming number of rioters, Kelley approached Officer Chow from behind and, with the help of two other rioters, tackled the officer to the ground.  Officer Chow struck his head on the steps of the Capitol as he fell.  Based on Officer Chow's actions and visible apparel at the moment that Kelley helped tackle him, the Court finds that Kelley knew that Officer Chow was a federal law enforcement officer engaged in the performance of his official duties in response to the riot at the Capitol and that Kelley tackled the officer with the purpose of obstructing him in the performance of those duties.

*Id.* at 15–16 (citations omitted).  This assault is captured on video. *See id.* (citing Government's

Exhibit 303, which played in open court during trial). Later, Kelley helped other rioters push through two other police lines. *Id.* at 16–17. And once he reached the perimeter of the Capitol Building, Kelley attempted to force entry and ultimately entered through a broken window:

> Once Kelley arrived at the Senate Wing Door, he picked up a long plank of wood that another rioter had thrown partway through a window adjacent to the door, partly shattering the window. Using that piece of wood, [Kelley] forcibly shattered another part of the window, widening the opening into the Capitol Building. He then kicked the Senate Wing Door twice from the outside, attempting to force it open. Moments later, two other rioters used a shield stolen from police officers and the piece of wood to shatter what remained of the adjacent window that Kelley had damaged. Kelley then climbed through the broken window into the Capitol Building at approximately 2:13 p.m.

*Id.* at 17 (citations omitted). These actions, too, are captured on video. *See id.*

Kelley was the fourth rioter, among hundreds, who entered the Capitol Building on January 6, 2021. *See id.* Once inside, Kelley immediately began attempting to help others force entry:

> [Kelley] pushed hard on the Senate Wing Door, attempting to force it open from the inside despite the fact that it was locked. Then, after watching another rioter try and fail to kick the door open, Kelley returned and kicked the locked door open with great force, seriously damaging the door in the process. After Kelley succeeded in kicking the door open, rioters immediately began streaming through the doorway into the Capitol Building.

*Id.* at 17 (citations omitted). Again, Kelley's actions are captured on video. *See id.*

Kelley then joined other rioters in parading through the halls of the Capitol Building, intent on disrupting the certification of the votes of the Electoral College. *Id.* at 17–18. Kelley ultimately made his way into the Senate Gallery, where he took two "selfie"-style photographs of himself. *Id.* at 18–20. He then proceeded through several other rooms of the Capitol Building that were closed to the public at the time, including the Rotunda, where he took another photograph. *Id.* at 20. Kelley exited the Capitol Building at approximately 2:55 p.m., having been inside the building for about 42 minutes. *Id.* at 20.

After the events of January 6, 2021, a grand jury in the Eastern District of Tennessee charged Kelley by indictment with, among other things, conspiracy to murder agents of the Federal Bureau of Investigation who had participated in the investigation of his role in the January 6 riot. *See* Indictment, *United States v. Edward Kelley*, 3:22-cr-118-TAV-JEM, ECF No. 17 (E.D. Tenn. Dec. 21, 2022); *see also* Criminal Complaint, *United States v. Edward Kelley*, 3:22-cr-118-TAV-JEM, ECF No. 3 (E.D. Tenn. Dec. 16, 2022). A jury in the Eastern District of Tennessee convicted Kelley of these charges in November 2024. *See* Jury Verdict, *United States v. Edward Kelley*, 3:22-cr-118-TAV-JEM, ECF No. 85 (E.D. Tenn. Nov. 11, 2024).

On April 7, 2025, Kelley is scheduled to be sentenced in this District for the three felony and eight misdemeanor offenses related to his conduct on January 6, 2021, of which this Court found him guilty beyond a reasonable doubt. *See* Min. Order (Nov. 8, 2024).

## II.

On January 21, 2025, the Government moved to dismiss the superseding indictment against Kelley "with prejudice" under Federal Rule of Criminal Procedure 48(a). Gov't's Mot. to Dismiss, ECF No. 87. Kelley consents to the relief requested in this motion. *See id.* As the "reason for this dismissal," the Government cites an as-yet unnumbered presidential Proclamation titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." *Id.* That Proclamation, in relevant part, "direct[s] the Attorney General to pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Unnumbered Proclamation, __ Fed. Reg. ____ (Jan. 20, 2025), https://perma.cc/W4NT-4K4S.

By its terms, Rule 48(a) allows the Government, "with leave of court," to "dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a).  It does not explicitly grant either the Government or the trial court the authority to vacate or set aside a plea of guilty, a jury verdict, or a court's findings of fact and conclusions of law following a bench trial.  *See id.*; *see also United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006) (noting that "both the text of [Rule 48] and its roots in the common law doctrine of *nolle prosequi* cast doubt on Rule 48's applicability post-conviction" without deciding whether Rule 48 "can properly be used to vacate a final conviction"); *Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010) (questioning whether Rule 48 allows dismissal following "conviction and unsuccessful direct appeal" without resolving whether dismissal under Rule 48 was proper under those circumstances).

However, the U.S. Court of Appeals for the D.C. Circuit has indicated in dicta that the Government may seek dismissal of criminal charges under Rule 48(a) at least until a judgment becomes final on direct appeal.  *See United States v. Knight*, 981 F.3d 1095, 1109 (D.C. Cir. 2020) (citing *Rinaldi v. United States*, 434 U.S. 22 (1977)); *see also Smith*, 467 F.3d at 788–89 (concluding that trial courts have jurisdiction to entertain Rule 48 motions "after sentencing and appeal"); *cf. Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) ("There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended.").  It follows that the Government may also seek dismissal under Rule 48(a) before the trial court has sentenced the defendant.  Consistent with that conclusion, courts in this District have granted Rule 48(a) motions filed after trial but before sentencing.  *See, e.g.*, *United States v. Venkata*, 709 F. Supp. 3d 9, 19 (D.D.C. 2024) (RDM); *United States v. Purdy*, No. 22-cr-19-1, 2025 WL 219111, at *2 (D.D.C. Jan. 14, 2025) (RCL).

Upon consideration of the relevant authority, this Court agrees that Rule 48(a) is a proper vehicle for dismissal of a criminal case "with leave of the court" before sentencing. The Court must therefore consider whether to grant its leave to dismiss this case. *See United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that the "requirement of judicial leave" in Rule 48 "gives the court a role in dismissals following indictment," even when "the defendant concurs in this dismissal"); *United States v. Flynn*, 507 F. Supp. 3d 116, 126–31 (D.D.C. 2020) (EGS) (analyzing the scope of a trial court's discretion under Rule 48(a)); *see also Rinaldi*, 434 U.S. at 30 n.15 (noting that Rule 48 "obviously vest[s] some discretion in the court" without deciding whether that discretion extends to cases in which the defendant consents to dismissal). To inform this analysis, the Court may "require a statement of reasons and underlying factual basis" for the Government's motion to dismiss. *See Ammidown*, 497 F.2d at 620.

Here, the Government's only stated reason for pursuing dismissal with prejudice is that the President has ordered the Attorney General to do so. *See* Gov't's Mot. (citing Unnumbered Proclamation, __ Fed. Reg. ____ (Jan. 20, 2025), https://perma.cc/W4NT-4K4S). The Court does not discern—and neither party has identified—any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *See United States v. Nixon*, 418 U.S. 683, 693 (1974).

### III.

Dismissals of charges, pardons after convictions, and commutations of sentences will not change the truth of what happened on January 6, 2021. What occurred that day is preserved for the future through thousands of contemporaneous videos, transcripts of trials, jury verdicts, and

6

judicial opinions analyzing and recounting the evidence through a neutral lens. Those records are immutable and represent the truth, no matter how the events of January 6 are described by those charged or their allies.

What role law enforcement played that day and the heroism of each officer who responded also cannot be altered or ignored. Present that day were police officers from the U.S. Capitol Police and those who came to their aid when called: the D.C. Metropolitan Police Department, Montgomery County Police Department, Prince George's County Police Department, Arlington County Police Department, and Fairfax County Police Department. Grossly outnumbered, those law enforcement officers acted valiantly to protect the Members of Congress, their staff, the Vice President and his family, the integrity of the Capitol grounds, and the Capitol Building—our symbol of liberty and a symbol of democracy around the world. For hours, those officers were aggressively confronted and violently assaulted. More than 140 officers were injured. Others tragically passed away as a result of the events of that day. But law enforcement did not falter. Standing with bear spray streaming down their faces, those officers carried out their duty to protect.

All of what I have described has been recorded for posterity, ensuring that what transpired on January 6, 2021 can be judged accurately in the future.

*   *   *

## IV.

For the foregoing reasons, it is hereby **ORDERED** that:

- The Government's [87] Motion to Dismiss is **GRANTED**;

- The [52] Superseding Indictment is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Criminal Procedure 48(a);

- Defendant Edward Kelley is **RELEASED** from further detention in connection with this case, provided that such release shall not affect Kelley's detention in connection with any other case;

- All scheduled proceedings and deadlines in this matter, including the Sentencing Hearing scheduled to take place on April 7, 2025, and the associated deadlines for Memoranda in Aid of Sentencing, are **VACATED**; and

- All pending motions are **DENIED AS MOOT**.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated:** January 22, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge